IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PERATON, INC.                           :

                                        :

   v.                                   :   Civil Action No. DKC 25-2164

                                        :

SAM HUSSAIN

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trade secrets case is the motion for preliminary injunction filed by Peraton, Inc. ("Plaintiff"). (ECF No. 3). The issues have been briefed, and the court now rules, no hearing being deemed necessary.[1] Local Rule 105.6. For the following reasons, the motion will be denied.

---

[1] Plaintiff did not request a hearing on its motion for preliminary injunction. In the unusual absence of such a request, the court exercises its discretion not to hold a hearing on the motion. *See* 11A Wright & Miller, Fed. Prac. & Proc. § 2949 (3d ed. 2025) ("Rule 65 does not explicitly require an oral hearing on a preliminary-injunction motion."); *GlaxoSmithKline, LLC v. Brooks*, No. 22-cv-364-PWG, 2022 WL 2916170, at *2 (D.Md. July 25, 2022) ("[U]nder certain circumstances, a district court may enter [or decline to enter] a preliminary injunction without holding a hearing." (citation modified)); *accord State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 83 (2d Cir. 2024) ("Defendants do not appear to have requested an evidentiary hearing on the preliminary injunction motion in the district court, and they have thus forfeited their right to such a hearing.").

**I.   Background**

    **A.   Factual Background[2]**

Plaintiff Peraton "is a leading national security company, engaged primarily in government contracting in the areas of space, intelligence, cyber, defense, homeland security, citizen security, and health"; it "employs approximately 18,000 persons" and generates "annual revenues of more than $6 billion." (ECF No. 1 ¶ 10). Defendant Sam Hussain "is a former employee of [Plaintiff] Peraton who worked as a Director of Corporate Growth and Strategy for Peraton from on or about September 19, 2022 through May 9, 2025." (*Id.* ¶ 16). By virtue of Defendant's position, he "had access to . . . portions of Peraton confidential, proprietary, and trade secret information." (*Id.* ¶ 17). As a condition of his employment, Defendant signed a Letter of Understanding ("LOU") with Plaintiff to govern their employment relationship. (*Id.* ¶ 18; ECF No. 1-1). Relevant covenants in the LOU include an agreement to maintain confidentiality during and after employment, and not to solicit Plaintiff's customers for eighteen months after departing Plaintiff's employ. (ECF Nos. 1 ¶ 19; 1-1 ¶¶ 7, 12). The LOU also contains an injunction clause in which Defendant "acknowledge[s] and agree[s] that [Plaintiff] may suffer immediate and irreparable harm in the event of [Defendant's] actual or

---

[2] All facts are undisputed unless otherwise noted.

threatened breach," and a Virginia choice-of-law clause. (ECF Nos. 1 ¶ 19; 1-1 ¶¶ 5, 17).

In either late April or early May, Plaintiff notified Defendant he "would be terminated pursuant to the elimination of his position." (ECF Nos. 1 ¶ 23; 9, at 2). Defendant's final day would be May 9, 2025. (ECF No. 1 ¶ 23). On May 8, 2025, Defendant executed an "Employee Debriefing Form" affirming his understanding of and compliance with his confidentiality obligations. (*Id.* ¶¶ 24–25). On May 9, Defendant's final day, Plaintiff provided him with a Severance Agreement, which, once in effect, would "contain[] and comprise[] the entire agreement and understanding of the parties." (ECF Nos. 9-1 ¶ 7(e); 15, at 4). The Severance Agreement was "conditional upon [Defendant] having returned all [company] property to [Plaintiff] prior to [Defendant's] acceptance of this Agreement." (ECF Nos. 9-1 ¶ 4(d); 15, at 7). Defendant did not sign the Severance Agreement on May 9. (*See* ECF Nos. 9-5 ¶ 10; 15, at 5).

Defendant did, however, forward certain work emails to his personal email account on May 9. (ECF Nos. 1 ¶ 28; 9-5 ¶ 9). Plaintiff alleges that Defendant did so between 11:00 PM and 12:00 AM, and that the emails contained "confidential, proprietary, and trade secret information." (ECF No. 1 ¶ 28). Plaintiff summarizes the alleged content of each of the forwarded emails, which

3

purportedly includes confidential information regarding Plaintiff's win strategies on impending bids. (*Id.*). Defendant also accessed Plaintiff's SharePoint site on or around May 9, and Plaintiff alleges that he did so to "view, modify and download" materials pertaining to "one of the most significant business pursuits [Plaintiff] is engaged in this year." (*Id.* ¶ 33). Plaintiff discovered on May 10 that Defendant had forwarded to himself the emails the day before, (*Id.* ¶ 30), and learned in the ensuing month that Defendant had accessed the SharePoint site, (*Id.* ¶ 33). From May 10 through May 12, Plaintiff conducted "an initial internal investigation" regarding Defendant's forwarded emails. (ECF No. 15, at 5).

On May 12, Defendant signed and returned the Severance Agreement to Plaintiff. (*Id.*). Plaintiff then notified Defendant that same day that he had breached his confidentiality obligations by forwarding himself the emails and thus it would rescind the Severance Agreement. (*Id.*). According to his sworn declaration, Defendant promptly deleted the emails he had forwarded to himself.[3] (ECF No. 9-5 ¶ 16). Plaintiff then demanded, either on May 13 or 14, that Defendant provide an accounting of the company information

---

[3] Plaintiff does not accept Defendant's representation that he deleted the emails, (ECF No. 15, at 1, 2, 11, 13, 15), but provides no evidence to contradict Defendant's sworn declaration.

Defendant possessed and with whom he had shared it. (ECF Nos. 1 ¶ 31; 1-5; 9, at 3 & n.1).

On June 2, Defendant represented to Plaintiff through counsel that he had immediately deleted the emails in an effort to avoid rescission of the Severance Agreement. (ECF Nos. 1 ¶ 37; 9-3, at 3). He further contended that Plaintiff was in breach of the Severance Agreement, (ECF No. 9-3, at 2-3), and separately asserted that Plaintiff had discriminated against him on the basis of race and national origin in violation of Title VII, (*Id.* at 5-6). Defendant alleges that he attempted to set up a call through counsel with Plaintiff on May 23, June 2, and June 23, but received no response. (ECF No. 9, at 4–5).

Sometime in June, Defendant "accepted a position as Head of Defense at Capgemini SE," a firm engaged in government contracting that has "competed with [Plaintiff] for procurements and contracts." (ECF No. 1 ¶ 39). According to Defendant, his position "is focused exclusively on strategic leadership and growth planning," and he has not "participated in[] any contracts, bids, or proposals that involve or compete with [Plaintiff]." (ECF No. 9-5 ¶ 32).

B.   **Procedural Background**

On July 3, 2025, Plaintiff Peraton, Inc. filed a complaint against Defendant Sam Hussain, alleging various state claims for

5

breach of contract, violation of the Virginia Uniform Trade Secrets Act, breach of fiduciary duty, conversion, fraud, and unjust enrichment, and a federal claim for violation of the Defend Trade Secrets Act. (ECF No. 1). Four days later, Plaintiff filed a motion for preliminary injunction against Defendant, seeking to enjoin Defendant "from directly or indirectly using, retaining, disclosing, or transmitting for any purpose any and all property, non-public information, trade secrets, and confidential or proprietary information of [Plaintiff]." (ECF No. 3). On August 27, 2025, Defendant filed his opposition to Plaintiff's preliminary injunction motion. (ECF No. 9). On September 12, 2025, Plaintiff filed its reply to Defendant's opposition. (ECF No. 15).[4]

## II. Standard of Review

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 273 (4th Cir. 2025) (alteration in original) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). The four-part *Winter* test for preliminary relief is well established: A plaintiff must establish

---

[4] Because Defendant executed a waiver of service, his answer or motion under Rule 12 is due by October 6, 2025.

"[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (alterations in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The plaintiff must make a clear showing on all four factors. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–46 (4th Cir. 2009) (citing *Winter*, 555 U.S. at 20, 22), *vacated on other grounds by*, 559 U.S. 1089 (2010), *aff'd*, 607 F.3d 355 (4th Cir. 2010) (per curiam). Accordingly, "a district court is entitled to deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors." *Vitkus*, 79 F.4th at 361 (citing *Henderson ex rel. NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018)).

### III. Analysis

It is unnecessary to address the likelihood of success on the merits, balance of the equities, and public interest factors because, even if Plaintiff could provide the requisite clear showing on each, it plainly cannot do so on the irreparable harm factor.

Courts in this district have noted that the United States Court of Appeals for the Fourth Circuit has not sanctioned a rebuttable presumption of irreparable harm when the plaintiff has shown that he is likely to succeed on the merits of his trade secret misappropriation claim. *See Brightview Grp., LP v. Teeters*, 441 F.Supp.3d 115, 138 (D.Md. 2020) (contrasting the apparent lack of a presumption in the Fourth Circuit with the adoption of a presumption in several other circuits). Instead, the Fourth Circuit "appears to require an individualized analysis of irreparable harm on a case-by-case basis." *Id.* Within this individualized analysis, the irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). Importantly, there must be ongoing or threatened future harm, not merely past harm.

Plaintiff first seeks to establish *per se* irreparable harm through contractual and statutory arguments, but these contravene the requirement of individualized analysis. Invoking the LOU,[5] which provides in an injunction clause that Mr. Hussain

---

[5] The parties dispute whether the LOU is the governing agreement between them, rather than the Severance Agreement. The court need not decide at this stage which one governs because even if the LOU governs, the contractual language acknowledging the possibility of irreparable harm is insufficient to establish actual irreparable harm.

8

"acknowledge[s] and agree[s] that [Peraton] *may* suffer immediate and irreparable harm in the event of [his] actual or threatened breach" of his confidentiality obligations, (ECF No. 1-1 ¶ 5 (emphasis added)), Plaintiff asserts that Defendant has effectively conceded the irreparable harm factor. (*See* ECF No. 3-1, at 28). Such injunction clauses, however, are not dispositive. *E.g.*, *Bethesda Softworks, LLC v. Interplay Ent. Corp.*, 452 Fed.App'x 351, 353 (4th Cir. 2011) (declining to view a contractual stipulation of irreparable injury as dispositive because "contractual agreements alone do not control the district court's exercise of its equitable discretion"); *Reworld Sumter Indus., LLC v. VEP Env't, LLC*, No. 25-cv-5128, 2025 WL 2695014, at *13 (D.S.C. Sep. 19, 2025) (explaining that a contractual stipulation regarding irreparable harm is not dispositive and merely "reinforces Plaintiff's showing of irreparable harm"); *accord Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*, No. 11-cv-9715, 2012 WL 75431, at *4 (S.D.N.Y. Jan. 6, 2012) (holding that a contractual stipulation as to irreparable harm "is simply one piece of evidence" as part of the court's independent assessment of irreparable harm). The injunction clause in this case carries particularly little weight because it simply provides that Plaintiff "*may* suffer immediate and irreparable harm" due to Defendant's breach, all but accepting that the final determination

will be fact specific and subject to judicial discretion. The court thus grants little weight to the parties' contractual irreparable harm stipulation.

Plaintiff also posits that it "need not allege or prove irreparable harm when it involves a statute that authorizes injunctive relief. All that need be proved is a violation of the statute." (ECF No. 3-1, at 28 (quoting *Peraton, Inc. v. Raytheon Co.*, No. 17-cv-979, 2017 WL 11501665, at *4 (E.D.Va. Nov. 7, 2017))). Here, Plaintiff invokes the Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act, which both authorize injunctive relief. (*Id.* (citing 18 U.S.C. § 1836(b)(3)(A)(i); Va. Code Ann. § 59.1-337)). The *Peraton* case Plaintiff relies on, however, misreads the precedent it cites, *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988). In *Capital Tool*, the Fourth Circuit took care to distinguish preliminary injunctions from final injunctions, holding that the plaintiff need not make the irreparable harm showing only when seeking a *final* injunction. *Capital Tool*, 837 F.2d at 172 ("The difficulty with [Plaintiff's] argument lies in its failure to appreciate the difference between final and preliminary injunctions."). In fact, the *Capital Tool* court held that the district court had not clearly erred in denying a preliminary injunction for lack of irreparable harm even though the underlying

10

statute authorized injunctive relief. *Id.* at 173. Therefore, an independent assessment of irreparable harm remains necessary.

In a trade secrets misappropriation case, irreparable harm stems from the ongoing or threatened acquisition, use, or disclosure of trade secrets, or perhaps inevitable disclosure thereof. For example, "the possibility of permanent loss of customers to a competitor or the loss of goodwill" constitute irreparable harm. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994), *abrogated on other grounds by*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Plaintiff fails to establish any of these harms at this stage.

Plaintiff does not allege ongoing acquisition of its trade secrets, but rather focuses on what it deems to be ongoing or threatened use or disclosure of the alleged trade secrets Defendant already acquired by supposedly improper means. (ECF Nos. 1 ¶ 42 ("Peraton reasonably believes that Hussain . . . will continue to use and disclose[] Peraton's confidential, proprietary, and trade secret information to Peraton's detriment."); 3-1, at 28 ("Peraton may continue to suffer irreparable harm because its confidential, propriet[ary], and trade secret information will be lost to it and will be used and disclosed by Hussain to the detriment of Peraton.")). Crucially, however, Defendant declares under oath

11

that, on May 12, 2025, he "deleted all emails that [he] had forwarded to [his] personal email account on May 9, 2025." (ECF No. 9-5 ¶ 16). He further declares that he "ha[s] not, at any time, accessed, used, or disclosed any Peraton information in any capacity" since deleting the forwarded emails. (*Id.* ¶ 32). Finally, he proposes submitting the matter to a "mutually acceptable independent forensic expert . . . [who] will be able to determine" that Defendant deleted the emails and did not forward them to anyone else before doing so. (*Id.* ¶ 27). Plaintiff responds by suggesting that the court should not credit Defendant's "self-serving declaration" that he has deleted the emails, especially because Defendant "offers no corroborating evidence of deletion, nor any assurance that he no longer retains other confidential materials."[6] (ECF No. 15, at 1). Defendant's sworn declaration that he deleted the emails *is* evidence, however, and it is Plaintiff who has failed to supply evidence to contradict Defendant's declaration. If Plaintiff desired the court to make

---

[6] The other materials Plaintiff refers to appear to be those Defendant accessed on SharePoint on his final day of employment. (ECF No. 1 ¶ 33). Plaintiff alleges that Defendant downloaded materials from the SharePoint, (*Id.*), but does not allege how he would have retained those materials when he left the office, such as by printing the materials. Consequently, it is not remotely clear that Defendant ever possessed those materials following his termination.

credibility determinations, it should have requested a hearing. *See supra* note 1.

Because the emails containing the alleged trade secrets have been out of Defendant's possession for nearly five months now, it is unlikely, much less "clear," that there is ongoing or threatened use or disclosure of Plaintiff's trade secrets. *See, e.g.*, *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F.Supp.3d 1037, 1045, 1056 (D.Minn. 2019) (finding no irreparable harm where the defendant stated in a sworn declaration that he deleted all confidential information of his former employer from his personal devices); *accord Am. Airlines, Inc. v. Imhof*, 620 F.Supp.2d 574, 580 (S.D.N.Y. 2009) (finding no irreparable harm from threatened disclosure where the defendant "has offered to return or destroy all copies" of confidential information). Instead, Defendant's deletion of the emails satisfies whatever injunctive relief the court otherwise could have ordered.[7] *Elgin Separation Sols., LLC*

---

[7] A court in this district has held that the defendants' "delet[ion] [of] purportedly all of the emails containing [misappropriated] information . . . does not eliminate the risk of future use." *Brightview*, 441 F.Supp.3d at 140. The court reached that conclusion, however, because the defendants there testified that they had committed the contents of the misappropriated materials to memory. *Id.* Here, conversely, Defendant repeatedly represents that he cannot recall the details of all the emails Plaintiff alleges he misappropriated, (*E.g.*, ECF No. 9-5 ¶¶ 18, 19, 26), and Plaintiff does not allege that Defendant has committed the contents of the misappropriated emails to memory.

*v. Dillon*, No. 23-cv-440, 2023 WL 6796201, at *6 (S.D.W.Va. Oct. 13, 2023) ("Such cooperation [in returning misappropriated documents] undercuts a finding of irreparable harm where the injunctive relief available has previously been attained.").[8]

Finally, the doctrine of inevitable disclosure cannot establish irreparable harm to Plaintiff. In its merits analysis, Plaintiff asserts that Defendant "inevitably will disclose the Peraton trade secret information he has misappropriated." (ECF No. 3-1, at 23). Although some courts recognize an inevitable disclosure doctrine, it is not clear that the inevitable disclosure doctrine is recognized under Virginia or federal law, and it is flatly rejected under Maryland law,[9] *Brightview*, 441 F.Supp.3d at

---

[8] Plaintiff also contends that Defendant disclosed the emails to his counsel because his counsel "described in detail the information and documents misappropriated by [Defendant]." (ECF No. 3-1, at 15). Defendant declares that he did not share the emails with his counsel because he deleted them before retaining counsel. (ECF No. 9-5 ¶ 19). Even if Defendant did share the emails with his counsel, and such sharing was improper, however, that is a *past* harm, not an ongoing or future harm capable of being enjoined.

[9] Neither party fully commits to whether Virginia or Maryland law will govern all the state law claims. (ECF Nos. 3-1, at 19 n.5, 25 n.11, 26, 27; 9, at 11 & n.4, 18). That uncertainty is likely due to at least two factors: (1) the Virginia choice-of-law provision appears in the LOU, the applicability of which the parties dispute; and (2) the Virginia choice-of-law provision states that Virginia law "will govern the interpretation, validity, and effect of *this agreement*," but says nothing about what law applies to noncontractual claims. (ECF No. 1-1 ¶ 17 (emphasis added)). Either way, at this stage the parties have not

14

137 ("[T]he [then-]Maryland Court of Appeals has denounced the issuance of injunctions under the 'inevitable disclosure' theory of irreparable harm." (citing *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 322–23 (2004))). Plaintiff cites an unpublished opinion by a Virginia circuit court for the proposition that inevitable disclosure is a viable theory under Virginia law; that opinion itself explains that although "Virginia does not recognize the inevitable disclosure doctrine, . . . [non]recognition is not akin to rejection." *MeadWestvaco Corp. v. Bates*, No. 13-1589, 2013 WL 12183821, at *9 (Va.Cir.Ct. Aug. 1, 2013) (alteration in original). That is hardly a sound basis for the court to apply the doctrine here, and subsequent Virginia courts have declined to follow *MeadWestvaco*. *SanAir Techs. Lab'y, Inc. v. Burrington*, No. 15-1054, 2015 WL 12588951, at *3 (Va.Cir.Ct. Sep. 25, 2015) (noting that the *MeadWestvaco* court concluded only that the inevitable disclosure doctrine would *likely* apply and did not actually apply it). Moreover, Plaintiff has not directed the court to any precedent in the Fourth Circuit for applying the doctrine under federal law, and the court is unaware of any. It would be inappropriate, then, to pioneer the inevitable disclosure doctrine in service of an extraordinary remedy.

---

highlighted any salient difference between Virginia and Maryland law on the claims alleged.

Defendant and Plaintiff dedicate most of their irreparable harm briefing to Plaintiff's delay between discovering Defendant's alleged misappropriation on May 10 and filing this motion for a preliminary injunction on July 7.  By the court's count, fifty-eight days elapsed in the interim and now, at the time of this opinion, nearly five months have passed.  Plaintiff's delay in filing the motion for preliminary injunction may have been reasonable to allow it to conduct its internal investigation and determine whether Defendant had accepted employment elsewhere.  On the other hand, Plaintiff's apparent unwillingness to communicate with Defendant's counsel since early June and failure to request a hearing in the nearly three months its preliminary injunction motion has been pending both cut against a finding of irreparable harm.  Such behavior tends to betray a lack of the urgency typically indicative of irreparable harm.  *See Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989).  Delay and lack of urgency, in any event, are just one factor in the irreparable harm analysis and not as weighty as Defendant's deletion of emails discussed above.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for preliminary injunction will be denied.  A separate order will follow.

                                   /s/
                              DEBORAH K. CHASANOW
                              United States District Judge