IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PERATON INC.

    v.   : Civil Action No. 25-2164

SAM HUSSAIN

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trade secrets case are the motion to dismiss for failure to state a claim filed by Sam Hussain ("Mr. Hussain" or "Defendant"), (ECF No. 18), the motion for expedited discovery filed by Peraton Inc. ("Peraton" or "Plaintiff"), (ECF No. 23), and the motion for leave to file surreply concerning the discovery motion filed by Mr. Hussain, (ECF No. 28). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied, the motion for expedited discovery will be denied, and the motion for leave to file surreply will be denied as moot.

## I. Background

### A. Factual Background[1]

Plaintiff Peraton "is a leading national security company" incorporated in Maryland with its principal place of business in

---

[1] All facts herein are as alleged in the Complaint.

Herndon, Virginia. (ECF No. 1 ¶¶ 5, 10). It is "engaged primarily in government contracting in the areas of space, intelligence, cyber, defense, homeland security, citizen security, and health"; it "employs approximately 18,000 persons" and generates "annual revenues of more than $6 billion." (*Id.* ¶ 10). The company "operates in a highly competitive business environment" with firms "vying for limited government contracts." (*Id.* ¶ 12). Due to the sensitive nature of its work, Peraton's property and materials often contain "confidential, proprietary, and trade secret information," which it "expends significant resources to develop." (*Id.* ¶¶ 11, 14). For example, it spends "millions of dollars a year" to "research[] and analyz[e] government contract vehicles and develop[] strategies to win contracts and procurements." (*Id.* ¶ 14). Peraton's "success is dependent in substantial part on maintaining the secrecy" of such information, and it "would lose its competitive advantage if a competitor obtained" it. (*Id.* ¶ 13). To protect secrecy, it requires that employees "execute non-disclosure agreements," utilizes "multi-factor authentication to access Peraton's information, systems, and network," trains employees on "transmission, storage and handling" of confidential and trade secret information, limits access to sensitive information "based upon job requirements," and includes non-

2

disclosure policies and prohibitions in its Code of Conduct.  (*Id.* ¶ 15).

Defendant Sam Hussain, a Maryland resident, (*Id.* ¶ 6), "is a former employee of Peraton who worked as a Director of Corporate Growth and Strategy for Peraton from on or about September 19, 2022 through May 9, 2025," (*Id.* ¶ 16).  By virtue of Mr. Hussain's position, he "had access to . . . portions of Peraton confidential, proprietary, and trade secret information, including, but not limited to, Peraton proposals, competitive strategies, pricing, [and] business plans."  (*Id.* ¶ 17).

As a condition of his employment, Mr. Hussain signed a Letter of Understanding ("LOU") with Peraton to govern their employment relationship. (*Id.* ¶ 18; ECF No. 1-1).  The LOU contains a Virginia choice-of-law clause.  (ECF Nos. 1 ¶ 19; 1-1 ¶ 17).  Relevant covenants in the LOU include an agreement to maintain confidentiality during and after employment, abide by Peraton's Code of Conduct and other policies, and not to solicit Peraton's customers for eighteen months after departing Peraton's employ. (ECF Nos. 1 ¶ 19; 1-1 ¶¶ 2, 7, 12).  Peraton's Code of Conduct, incorporated into the LOU, provides that "Peraton proprietary information . . . shall not be transferred to personally owned devices, personal email addresses, or unauthorized cloud services or storage solutions."  (ECF Nos. 1 ¶ 20; 1-2, at 18).  Peraton's

Acceptable Use Policy, also incorporated into the LOU, "strictly prohibited" the use of "personal email" to "download, store, process, transport, or transmit Peraton or customer data." (ECF Nos. 1 ¶ 21; 1-3 ¶ 5.16).

In May of 2025, Peraton notified Mr. Hussain that he "would be terminated pursuant to the elimination of his position." (ECF No. 1 ¶ 23). Mr. Hussain's final day would be May 9, 2025. (*Id.*). On May 8, 2025,[2] Mr. Hussain executed an "Employee Debriefing Form" affirming his understanding of and compliance with his ongoing confidentiality obligations. (*Id.* ¶¶ 24-25).

On the night of May 9, between 11:00 PM and midnight, Mr. Hussain forwarded "more than forty (40) emails, documents, and files" to his personal email account. (*Id.* ¶ 28). Peraton alleges that the emails contained "confidential, proprietary, and trade secret information." (*Id.*). It provides the subject line and summarizes the alleged content of thirty-seven such forwarded emails, which purportedly includes confidential information regarding, among other things, Peraton's win strategies on impending bids. (*Id.*). Mr. Hussain also accessed Peraton's SharePoint site during this time, where Mr. Hussain "view[ed],

---

[2] The signed Employee Debriefing Form is attached to the Complaint and indicates a signature date of May 9. (ECF No. 1-4, at 2). In any event, neither party disputes that it was signed before the alleged misappropriation occurred.

modif[ied] and download[ed]" allegedly "sensitive and proprietary information," including materials pertaining to "one of the most significant business pursuits Peraton [wa]s engaged in th[at] year." (*Id.* ¶ 33).  Peraton discovered on May 10 that Mr. Hussain had forwarded himself the emails the day before, (*Id.* ¶ 30), and learned in the ensuing month that Mr. Hussain had accessed the SharePoint site, (*Id.* ¶ 33).

On May 13, Peraton demanded that Mr. Hussain provide a complete accounting of the company information Mr. Hussain possessed, with whom he had shared it, and on which devices it was located.  (ECF Nos. 1 ¶ 31; 1-5).  Mr. Hussain did not provide the requested accounting, apart from a letter sent by his counsel to Peraton on June 2, 2025, describing the forwarded emails.  (ECF No. 1 ¶¶ 32, 38).  Peraton alleges that the June 2 letter indicated Mr. Hussain no longer believed he was bound by the LOU, (*Id.* ¶ 37), and that his counsel's description of the emails reveals that Mr. Hussain shared "confidential, proprietary, and trade secret information and documents with his counsel," (*Id.* ¶ 38).  The June 2 letter is not attached to the Verified Complaint.

Sometime in June 2025, Mr. Hussain "accepted a position as Head of Defense at Capgemini SE," a firm engaged in government contracting that has "competed with Peraton for procurements and contracts."  (*Id.* ¶ 39).  Peraton fears that Mr. Hussain's new

position puts its trade secrets in "actual jeopardy" because he will "use and disclose" the alleged trade secrets he forwarded himself and downloaded.  (*Id.* ¶¶ 39, 42).

### B.    Procedural Background

On July 3, 2025, Peraton filed a Verified Complaint against Mr. Hussain, requesting preliminary and permanent injunctive relief along with compensatory and punitive damages.  Peraton asserts state claims for breach of contract (Count I), violation of the Virginia Uniform Trade Secrets Act ("VUTSA") (Count II), breach of fiduciary duty (Count IV), conversion (Count V), fraud (Count VI), and unjust enrichment (Count VII), and a federal claim for violation of the Defend Trade Secrets Act ("DTSA") (Count III). (ECF No. 1).  Four days after filing its Verified Complaint, Peraton filed a motion for preliminary injunction against Mr. Hussain, seeking to enjoin Mr. Hussain "from directly or indirectly using, retaining, disclosing, or transmitting for any purpose any and all property, non-public information, trade secrets, and confidential or proprietary information of Peraton."  (ECF No. 3). On October 6, the court denied Peraton's motion for failure to demonstrate irreparable harm because Peraton failed to counter Mr. Hussain's sworn declaration that he had deleted the forwarded emails.  (ECF Nos. 16; 17).

That same day, Mr. Hussain filed a motion to dismiss Peraton's Verified Complaint for failure to state a claim. (ECF No. 18). Peraton responded on October 20, (ECF No. 20), and Mr. Hussain replied on October 27, (ECF No. 22).

Peraton then filed a motion to expedite discovery on November 11. (ECF No. 23). Mr. Hussain responded on November 25, (ECF No. 25), and Peraton replied on December 8, (ECF No. 26). Believing Peraton's reply to raise new factual matter, Mr. Hussain filed a motion for leave to file sur-reply on December 22, (ECF No. 28), which Peraton opposed on January 2, (ECF No. 29).

## II.  Motions for Expedited Discovery and Leave to File Surreply

Plaintiff seeks an order under Fed.R.Civ.P. 26(d)(1) authorizing expedited discovery in anticipation of a possible renewed motion for preliminary injunction. (ECF No. 23-1, at 5). Specifically, Plaintiff seeks to assess Defendant's assertion that he deleted all Peraton information in his possession, which the court found dispositive in Plaintiff's preliminary injunction motion. Rule 26(d) permits court-authorized discovery prior to the Rule 26(f) conference. "Courts in this District have adopted a reasonableness standard in reviewing expedited discovery requests, determining whether the request is supported by good cause, considering the totality of the circumstances." *Brightview Grp., LP v. Teeters*, No. 19-cv-2774-SAG, 2019 WL 11660174, at *1

7

(D.Md. Nov. 6, 2019) (citing *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. 09-cv-2499-WMN, 2009 WL 3746690, at *2 (D.Md. Nov. 2, 2009); *Océ N. Am., Inc., MCS Serv., Inc.*, No. 10-cv-984-WMN, 2010 WL 11553001, at *1 (D.Md. June 22, 2010)).  As Defendant notes, however, Plaintiff's motion is both "late and premature." (ECF No. 25, at 4).   In determining whether good cause exists, courts consider the following factors:

> 1. whether a motion for preliminary injunction is pending;
>
> 2. the breadth of the requested expedited discovery;
>
> 3. the reasons the moving party is requesting expedited discovery;
>
> 4. the burden on the opponent to comply with the request for expedited discovery;
>
> 5. whether the information sought expeditiously could be obtained more efficiently from some other source;
>
> 6. the extent to which the discovery process would be expedited; and
>
> 7. whether a motion to dismiss for failure to state a claim is pending.

*Courthouse News Serv. v. Harris*, No. 22-cv-548-ELH, 2022 WL 3577255, at *4 (D.Md. Aug. 18, 2022) (quoting *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D.Fla. 2021)).

At this time, in this case, expedited discovery is not warranted.  Factors one and seven weigh strongly against granting

8

expedited discovery because there is no motion for preliminary injunction pending, but there is a motion to dismiss for failure to state a claim pending.  Other courts have found these two factors to weigh considerably against finding good cause.  *See, e.g., Does 4 v. Musk*, No. 25-cv-462-TDC, 2025 WL 1505305, at *3–5 (D.Md. May 27, 2025) ("Where multiple factors presently weigh against expedited discovery, *and particularly where the Motion to Dismiss remains pending*, the Court finds that Plaintiffs have not shown the good cause necessary for the Court to grant the Motion." (emphasis added)); *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) ("Here, as no [preliminary injunction] hearing or determination is pending, expedited discovery is premature.").  As one court explained, "[t]he lack of a pending motion for a preliminary injunction greatly undercuts Plaintiff's assertion that he requires expedited discovery," and the existence of a colorable motion to dismiss suggests that expedited discovery might lead to "needless expenditures of the parties' time, money, and effort."  *Mullane*, 339 F.R.D. at 664, 668 (citing, inter alia, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757 n.4 (1980)).  Plaintiff has not pointed to any case in which expedited discovery was granted in the same posture as this case, namely: a previous motion for preliminary injunction had been denied, a motion to dismiss was pending, and a renewed motion

9

for preliminary injunction was anticipated but not filed. (*See* ECF Nos. 23-1, at 21-22; 26, at 5). And the request for expedited discovery is not based on new information coming to light. As Plaintiff acknowledges in its motion, it was on notice as early as June 2, 2025, of Defendant's assertion that he had deleted the forwarded emails. (ECF No. 23-1, at 12). Plaintiff had every opportunity to request expedited discovery and a hearing regarding the purported deletion in conjunction with its motion for preliminary injunction the following month, but it declined to do so. It does not get a second bite at the apple now.

Even if several of the remaining factors might weigh in favor of finding good cause, the procedural posture and history of this case preclude such a finding. The motion for expedited discovery will be denied, and Defendant's motion for leave to file surreply will accordingly be denied as moot. As will be seen, the court will deny the motion to dismiss, and discovery will proceed in the normal course. If an expedited discovery schedule is amenable to both parties, they will have the opportunity to confer and agree on such a schedule.

### III. Motion to Dismiss

Defendant moves to dismiss every count of Plaintiff's Verified Complaint. The motion to dismiss generally characterizes Plaintiff's Complaint as conclusory and thus insufficiently

10

supported by factual content to proceed. Defendant's characterization is inaccurate. Therefore, all counts will proceed.

###     A.    Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). Ordinarily, a plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant

11

is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

**B.   Choice of Law**

Six of Plaintiff's seven counts arise under state law.  When exercising supplemental jurisdiction over state law claims, federal courts apply the choice-of-law rules of the forum state. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  Therefore, Maryland's choice-of-law rules apply.

Plaintiff's breach of contract claim in Count I is distinct from the other state law claims because the LOU contains a choice-of-law clause selecting Virginia law.  (ECF Nos. 1 ¶ 19; 1-1 ¶ 17).  Under Maryland law, "Maryland courts generally apply the law of the chosen jurisdiction." *EnviroAnalytics Grp. LLC v. AXIS Surplus Ins. Co.*, 784 F.Supp.3d 821, 850 (D.Md. 2025) (citing *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015)).  Neither party has argued that the choice-of-law clause is invalid, nor do any of the exceptions to application of the choice-of-law clause appear to apply.  *See id.* at 850–51 (citing Restatement (Second) of Conflict of Laws § 187 (A.L.I. 1971)).  Accordingly, Virginia law governs Count I.

Virginia law also applies to the other state law claims.  "For tort claims, Maryland generally adheres to the *lex loci delicti*

*commissi*, or place of harm, principle to determine the applicable state's substantive law." *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D.Md. 2011) (citing *Hauch v. Connor*, 295 Md. 120, 123–24 (1983)).  For contract claims, Maryland follows the principle of *lex loci contractus*, or place of contracting, to determine the applicable state's substantive law.  *Cunningham*, 441 at 326.  Finally, when faced with a statutory claim, courts generally determine whether the statutory cause of action sounds in tort or contract and then apply the relevant choice-of-law principle.  *See id.* at 324–25; *Yeibyo v. E-Park of DC, Inc.*, No. 07-cv-1919-DKC, 2008 WL 182502, at *5 (D.Md. Jan. 18, 2008).

Counts IV (breach of fiduciary duty), V (conversion), and VI (fraud) are tort claims, and the law of the place of harm applies. When the plaintiff is a corporation, the harm occurs at its principal place of business.  *In re TMST, Inc.*, 610 B.R. 807, 819 (Bankr.D.Md. 2019) (citing *In re Infinity Bus. Grp., Inc.*, 497 B.R. 794, 804 (Bankr.D.S.C. 2013)); *see also Humana Inc. v. United Therapeutics Corp.*, No. 22-cv-3211-DLB, 2024 WL 1256261, at *1 n.1 (D.Md. Mar. 25, 2024); *KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*, No. 18-cv-2013-CCB, 2021 WL 4420636, at *6 (D.Md. Sep. 27, 2021).  Because Plaintiff's principal place of business is in Virginia, (ECF No. 1 ¶ 5), Virginia law governs these claims.  It is more difficult to characterize the Uniform Trade Secrets Act

13

claim in Count II and the unjust enrichment claim in Count VII. But whether they sound in tort or contract, the result is likely the same. If they are properly characterized as torts, then Virginia law governs, as established above. If they are instead properly characterized as contractual in nature, then the law of the place of contracting governs. Without any facts about where the contract was formed, the court will presume at this early stage that the contract was formed at Plaintiff's principal place of business in Virginia.[3]

Should the factual record evolve to affect the choice of law in this case, the issue can be revisited.

## C.    Count I: Breach of Contract

Defendant moves to dismiss Plaintiff's breach of contract claim, in which Plaintiff seeks to enforce the LOU that Defendant signed. In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by

---

[3] The VUTSA "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret," but does not affect "[c]ontractual remedies whether or not based upon misappropriation of a trade secret." Va. Code Ann. § 59.1–341 (West 2026). Neither party has mentioned this displacement provision or discussed how it would affect Counts IV–VII of the Verified Complaint.

the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004) (collecting cases). Because Defendant does not meaningfully contest that the LOU constituted an enforceable agreement between himself and Plaintiff, (ECF No. 18-1, at 13),[4] the first element is satisfied. Defendant does challenge the second and third elements, which will be addressed in turn.

Plaintiff identifies at least four obligations under the LOU that Defendant allegedly breached. First, he was required to "hold Peraton's confidential information in trust and confidence and . . . not to use such information for his own purposes, or for the benefit of others." (ECF No. 1 ¶ 45). Second, he was barred from "disclos[ing] Peraton's confidential information to third parties." (*Id.*). Third, he was obligated to "comply with Peraton's rules, including but not limited to those set forth in the Peraton Code of Conduct and company policies and procedures." (*Id.*). Defendant allegedly violated these three obligations in the final hour of his employment by forwarding emails containing Peraton's confidential information to his personal email account,

---

[4] Defendant appears to believe that a severance agreement he signed with Plaintiff on May 12, 2025, exclusively governs any claims between the parties arising after that date. (ECF No. 18-1, at 5 n.1, 13). The LOU was the governing agreement on May 9, however, when Defendant forwarded the emails in alleged breach of his confidentiality obligations. In any event, the severance agreement is not mentioned in the Complaint. Its applicability to any of Plaintiff's claims will be determined, if necessary, at a later stage of the litigation.

downloading confidential information from Peraton's SharePoint site, and later sharing Peraton's confidential information with his counsel. (*Id.* ¶ 47). Defendant contests that he breached these obligations, arguing that Plaintiff does not plausibly allege that he "made any use of" the supposedly confidential information in the forwarded emails "for his own benefit o[r] that of any third party." (ECF No. 18-1, at 14). Fourth, Defendant was required "to cooperate in all lawful acts which may be necessary or desirable in the judgment of Peraton to protect Peraton's confidential, proprietary, and trade secret information." (ECF No. 1 ¶ 45). Defendant allegedly breached this obligation by failing to cooperate with Plaintiff after its discovery of the forwarded emails, including by not providing (to Plaintiff's satisfaction) an accounting of the information forwarded as requested in Plaintiff's May 13 letter. (*Id.* ¶¶ 31, 32, 38, 47). Defendant disputes this alleged breach too, characterizing it as "conclusory" because the June 2 letter adequately responded to Plaintiff's May 13 letter and Plaintiff points to no other instance in which Defendant or his counsel obstructed or failed to cooperate with Plaintiff's efforts to recover its information. (ECF No. 18-1, at 14).

Plaintiff plausibly alleges that Defendant breached the LOU. In the LOU, Defendant "agree[d] to comply with . . . the Peraton

16

Code of Conduct and company policies and procedures." (ECF No. 1-1 ¶ 2). Peraton's Code of Conduct provides in relevant part that "Peraton proprietary information . . . shall not be transferred to personally owned devices, personal email addresses, or unauthorized cloud services or storage solutions." (ECF No. 1-2, at 18). Peraton's Acceptable Use Policy "strictly prohibited" the use of "personal email" to "download, store, process, transport, or transmit Peraton or customer data." (ECF No. 1-3 ¶ 5.16). As explained further in the next section, Plaintiff sufficiently alleges that the emails he forwarded to his personal email account contained trade secret information, which is inherently confidential and proprietary. Thus, it is plausible that Defendant breached the Code of Conduct incorporated into the LOU by "transferring" "Peraton proprietary information" to his "personal email address[]." Likewise, it is plausible that Defendant breached the Acceptable Use Policy incorporated into the LOU by "stor[ing]" "Peraton or customer data" in his "personal email."[5] Contrary to Defendant's representations, whether he used or

---

[5] The Code of Conduct and Acceptable Use Policy were sufficiently incorporated into the LOU such that breach of them constitutes breach of the LOU itself. *Cent. Tel. Co. of Va. v. Sprint Comm'cns Co. of Va., Inc.*, 759 F.Supp.2d 789, 799 (E.D.Va. 2011) (explaining that the "threshold for incorporation of extrinsic documents" into contracts is not "particularly high" in Virginia, only requiring that "the identity of the secondary document . . . be readily ascertainable" (citation modified)).

disclosed the confidential, proprietary, and/or trade secret information is irrelevant to whether he breached the Code of Conduct or Acceptable Use Policy incorporated into the LOU.

The Complaint is likewise sufficient regarding the other alleged breaches. For the same reasons that Plaintiff's allegations regarding breach of the Code of Conduct and Acceptable Use Policy are adequate, it is plausible that Defendant breached the LOU by failing to "hold Peraton's confidential information in trust and confidence." Plaintiff's allegations of disclosure to counsel also withstand scrutiny at this stage. Defendant at the very least discussed the contents of the forwarded emails, which plausibly included confidential information, with his counsel. Other courts have concluded that disclosure to counsel can still violate contractual obligations not to disclose confidential information. *See, e.g.*, *Hampton Rds. Connector Partners v. Land to Sand Site Servs., Inc.*, No. 23-cv-174, 2023 WL 8539536, at *9 (E.D.Va. Oct. 17, 2023) (citing *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 915 (4th Cir. 1997)). Although the content of those communications might be privileged, such privilege remains to be asserted. Finally, Plaintiff adequately alleges Defendant's failure to cooperate because Defendant supposedly did not provide the information requested in the May 13 letter. Defendant contends somewhat obliquely that the June 2 letter was

18

responsive, but the June 2 letter is not before the court on the motion to dismiss.[6]   Plaintiff has thus provided enough.   Each of its breach allegations suffices to clear the motion to dismiss.

Concerning the injury-or-damage element, Plaintiff alleges that it "has been damaged in an amount to be determined at trial, but currently estimated to be in excess of $1,000,000," and Defendant's continued retention, use, or disclosure of Peraton's confidential information would cause irreparable damage that "would not be readily ascertainable."   (ECF No. 1 ¶¶ 49, 51). Defendant attacks the sufficiency of these allegations, emphasizing that Plaintiff "has not alleged any specific loss of business value, competitive edge and/or a specific contract" due to the forwarded emails.   (ECF No. 18-1, at 15).   But even if Plaintiff cannot establish compensatory damages with any

---

[6] The June 2 letter was attached to Defendant's opposition to the preliminary injunction motion.  (ECF No. 9-3).  Unlike at the preliminary injunction stage, extrinsic evidence generally may not be considered on a motion to dismiss.  *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)). Extrinsic documents that are authentic and integral to the complaint may be considered, however, if they are attached to the complaint or the motion to dismiss.  *See id.* (quoting *Reamer*, 556 F.Supp.3d at 549).  Although Defendant does not formally attach the June 2 letter to his motion to dismiss, he repeatedly cites the June 2 letter by its record citation.  Even if that renders the letter "attached" to the motion, the letter is not integral to the Complaint because it does not form the basis of the claim. Instead, it is referred to as evidence of a failure to cooperate and simply raises a dispute of fact on that issue.

19

reasonable certainty, it "may be entitled to an award of nominal damages" under Virginia law, *Phoenix v. Vital Core Health Strategies*, No. 23-cv-357, 2025 WL 2313208, at *4 (E.D.Va. Aug. 11, 2025) (citing *Crist v. Metro. Mortg. Fund, Inc.*, 231 Va. 190, 195 (1986)), or permanent injunctive relief.  Regarding nominal damages, they may satisfy the third element of a breach of contract claim where "actual loss or injury is shown, but the plaintiff fails to prove the amount of damages."  *Minn. Laws. Mut. Ins. Co. v. Batzli*, 442 F.App'x 40, 52 (4th Cir. 2011) (quoting 22 Am.Jur.2d *Damages* § 8 (2003)).  In other words, all Plaintiff must allege is that it suffered some actual injury or loss as a result of Defendant's purported breaches.  Plaintiff derives value from its confidential information precisely because it is kept confidential, (ECF No. 1 ¶ 36), and the alleged loss of such confidentiality is adequate to support the injury-or-damage element at this stage.

Count I will not be dismissed.

### D.    Counts II & III: VUTSA & DTSA

Defendant next moves to dismiss Plaintiff's VUTSA and DTSA claims.  The "applicable standards under the DTSA and . . . the VUTSA are nearly identical."  *Am. Conservative Union v. Inst. for Legis. Analysis*, No. 24-cv-500, 2025 WL 510236, at *8 (E.D.Va. Feb. 13, 2025) (quoting *Apex Advanced Tech. LLC v. RMSI Private*

*Ltd.*, No. 21-cv-1400, 2022 WL 4826335, at *5 (E.D.Va. Sep. 30, 2022)).  Both statutes provide a claim for relief if (1) a trade secret exists and (2) the defendant misappropriated that trade secret.  *See* 18 U.S.C. § 1836(b)(1); Va. Code Ann. § 59.1-338 (West 2026).[7]  A trade secret is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information" that (1) "derives independent economic value . . . from not being generally known . . . and not being readily ascertainable through proper means" and (2) is the subject of "reasonable measures to keep such information secret" by the owner.  18 U.S.C. § 1839(3); *see also* Va. Code Ann. § 59.1-336. Misappropriation occurs when an individual acquires the trade secret by improper means or uses or discloses a trade secret without consent.  18 U.S.C. § 1839(5); *see also* Va. Code Ann. § 59.1-336.     Improper    means    "include[]    theft,    bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); *see also* Va. Code Ann. § 59.1-336.  Defendant attacks the sufficiency of Plaintiff's allegations regarding each

---

[7] The DTSA also requires that the trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  Defendant does not challenge this element.

element, but to no avail.  Plaintiff offers enough in its Complaint to proceed on these two counts.

First, Plaintiff alleges the trade secrets and their independent economic value with adequate specificity.  As Defendant notes, mere "catchall" phrases summarizing trade secret categories are not enough, *Sysco Mach. Corp. v. DCS USA Corp.*, No. 23-cv-134, 2023 WL 7752051, at *2 (E.D.N.C. Nov. 15, 2023) (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)), rather the plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade," *id.* (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998)).  Defendant's contention that Plaintiff's allegations constitute no more than catchall categories misses the mark.  Unlike the complaint in *Sysco*, where the plaintiff described its trade secrets in "broad, sweeping terms" like "technical documents, test videos, statistical data, [and] client contracts," *id.*, Plaintiff here identifies each of the nearly forty forwarded emails by subject line and includes a meaningful description of each such email, (ECF No. 1 ¶ 28).  A couple examples suffice. One email includes the subject line "Fw: USAF TENCAP HOPE – Strategy Session (Slides attached)" and the following description:

22

"Contains confidential and proprietary information pertaining to Peraton's win strategy review, customer engagement including competitive assessment for a $950 million dollar acquisition." (*Id.*). Another similar email contains the subject line "Fw: USSOUTHCOM SCITES Pursuit Deck" and "[c]ontains confidential and proprietary information including Peraton's strategy and competitive analysis for a $3 billion pursuit." (*Id.*). Both emails identify a particular opportunity and quite plausibly contain trade secret information concerning Peraton's proprietary approach to winning bids that would be valuable in a competitor's hands. Such bid and project information lies in the heartland of trade secret protection. *See Albert S. Smyth Co. v. Motes*, No. 17-cv-677-CCB, 2018 WL 3635024, at *4 (D.Md. July 31, 2018) ("In a competition for sales, information about potential customers and their buying habits, a competitor's pricing, business strategies, and vendors is a windfall, granting the recipient a key to undercut the competition's pricing, outbid their vendor contracts, and attract their customers."). Plaintiff's allegations regarding the forwarded emails are sufficiently specific to infer that the information therein includes trade secrets with independent economic value.

Resisting this conclusion, Defendant also argues that all the information in the forwarded emails was "public or non-

confidential information," but to the extent it was not, it was subject to change so as to deprive it of independent economic value.  (ECF No. 18-1, at 10, 17–18).  Regarding Defendant's position that the forwarded emails contained public information, the court draws reasonable inferences in favor of Plaintiff at this stage.  *Iqbal*, 556 U.S. at 678.  It is eminently reasonable to infer that emails with subject lines such as "Fw: USAF TENCAP HOPE – Strategy Session (Slides attached)" and "Fw: USSOUTHCOM SCITES Pursuit Deck" contain private, sensitive information regarding business pursuits.  With respect to the second argument, the mere possibility that trade secret information is subject to change cannot extinguish a trade secret claim at the motion to dismiss stage; otherwise, trade secrets consisting of business and economic information, which inherently fluctuates and evolves, would lose their protection.  The case Defendant relies on, *Optic Graphics, Inc. v. Agee*, 87 Md.App. 770 (1991), had already proceeded through trial and the trial court had made factual findings that the plaintiff's pricing information was so variable as to have no economic value to competitors, *id.* at 787–88.  It thus has no bearing on this case at this posture.

Next, Plaintiff plausibly alleges that it took reasonable measures to keep secret the information in question.  Plaintiff requires employees to "execute non-disclosure agreements,"

utilizes "multi-factor authentication to access Peraton's information, systems, and network," trains employees on "transmission, storage and handling" of confidential and trade secret information, limits access to sensitive information "based upon job requirements," and includes non-disclosure policies and prohibitions in its Code of Conduct.  (ECF No. 1 ¶ 15).  Courts routinely hold that the use of nondisclosure requirements, alone or in combination with other methods such as password protection, can satisfy this element. *See Md. Physician's Edge, LLC v. Behram*, No. 17-cv-2756-DKC, 2019 WL 4573417, at *7–8 (D.Md. Sep. 20, 2019) (denying summary judgment to defendant on ground of reasonable secrecy measures where employment agreement contained nondisclosure requirement); *DecisionQ Corp. v. GigM Techs., LLC*, No. 17-cv-232, 2017 WL 11504624, at *6–7 (E.D.Va. Aug. 9, 2017) (holding that Plaintiff adequately pleaded reasonable secrecy measures through the use of nondisclosure agreements and password protection); *Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F.Supp.3d 525, 539–40 (D.Md. 2023) (holding that Plaintiff adequately pleaded reasonable secrecy measures through the use of nondisclosure requirements, password protection, private servers, and secure facilities); *see also AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 97 (4th Cir. 2018) (approving another court's conclusion that "a confidentiality policy and restricting access to

electronic documents contributed to finding the documents at issue were trade secrets" (citation modified)).  Plaintiff's use of nondisclosure requirements, together with multi-factor authentication and the various other security measures listed, plainly clears this threshold.

Defendant counters with a standard that is far more onerous than the law requires.  Starting from the premise that Plaintiff employs "heightened measures within its email software to block trade secrets[] . . . from being shared externally," Defendant remarks that the Complaint lacks allegations that Defendant "bypassed or ignored any flags or blocks" or that any of the emails "were marked or labeled as containing trade secret information." (ECF No. 18-1, at 22).  Because Plaintiff does not allege any information regarding such email software, Defendant's assertions regarding its existence simply raise a factual matter beyond the current scope of review.  Even if Plaintiff had alleged such an additional security measure, Defendant confuses the inquiry.  The question is whether the measures taken were *reasonable*, not whether they were effective.  Such email software would only add to the reasonableness of Plaintiff's secrecy measures, even if they failed in the moment of alleged misappropriation.  Moreover, there is no indication in DTSA case law "that marking something 'confidential' is an irreducible requirement of finding an

26

employer has taken reasonable measures to keep the alleged trade secrets secret." *Behram*, 2019 WL 4573417, at *8. Defendant has not pointed to any VUTSA case law identifying such a requirement, either.

Turning to the final element, Plaintiff adequately alleges misappropriation. A person can misappropriate a trade secret through acquisition, use, or disclosure of the trade secret. *See* 18 U.S.C. § 1839(5); Va. Code Ann. § 59.1-336. Defendant mostly glosses over acquisition and focuses on what he views to be deficient allegations of use and disclosure. (ECF No. 18-1, at 19-20). "Even if an employee does not disclose trade secrets to a third party," however, "he can misappropriate those trade secrets if he knows or has reason to know he acquired them 'by improper means.'" *AirFacts*, 909 F.3d at 98 (citation modified) (interpreting a statutory provision identical in relevant part to that in the DTSA and the VUTSA). Both the DTSA and the VUTSA define "improper means" to include "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A); Va. Code Ann. § 59.1-336. As previously established, Plaintiff plausibly alleges that Defendant breached his duty of confidentiality under the LOU, Code of Conduct, and Acceptable Use Policy. At the very least, Defendant had reason to know of the duties these documents imposed given that he signed the LOU containing and incorporating them.

27

Accordingly, it is plausible that when Defendant forwarded the relevant emails to himself, he acquired trade secrets therein by improper means.  Likewise, Defendant's potential disclosure of trade secrets to his counsel is sufficiently alleged; Defendant plausibly knew at the time of disclosure the trade secrets were "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," 18 U.S.C. § 1839(5)(B)(ii)(II); Va. Code Ann. § 59.1-336.

Defendant's only other challenges to this element are that he did not "ma[ke] any effort to cover up the forwarding of emails to his personal account" and that he deleted the forwarded emails after Peraton notified him he possessed them improperly.[8]  (ECF No. 18-1, at 20).  Assuming this argument implies that Defendant did not acquire any trade secrets in the forwarded emails by improper means, it is unpersuasive.  The relevant statutes define "improper means."  Defendant apparently believes his post-forwarding actions to be exculpatory, but they have no bearing on whether the forwarding of the emails constituted "improper means" in the moment.  Under Plaintiff's theory, the improper acquisition

---

[8] Defendant's purported deletion of emails, though central to the preliminary injunction inquiry, is inapposite on his motion to dismiss because it hinges on facts outside the four corners of the Complaint.

occurred the second the emails hit Defendant's personal inbox. The language of the DTSA and the VUTSA supports that theory.

Lastly, Defendant contends that Plaintiff has failed to allege damages related to its DTSA and VUTSA claims. (ECF No. 18-1, at 21). Damages, however, are not an element of a *prima facie* claim under either statute. The DTSA and VUTSA both permit alternative remedies including injunctive relief and the imposition of a royalty. *See* 18 U.S.C. § 1836(b)(3); Va. Code Ann. § 59.1-337 to -338. The appropriate remedy, if warranted, will be determined at a later time.

In addition to the forwarded emails allegations, Plaintiff also alleges that Defendant accessed its SharePoint site in the final hour of his employment and downloaded "extremely sensitive and proprietary information," including "confidential files related to one of the most significant business pursuits Peraton [wa]s engaged in th[at] year." (ECF No. 1 ¶ 33). Within those files were "the organizational chart, strategic information and the implementation plan." (*Id.*). Defendant briefly attacks the SharePoint allegations as insufficiently specific and devoid of any breach of confidentiality. (ECF Nos. 18-1, at 27 n.6; 22, at 3). This court previously noted that Plaintiff "does not allege how [Defendant] would have retained those materials," and thus "it is not remotely clear that Defendant ever possessed those materials

following his termination." (ECF No. 16, at 12 n.6). The fact that Defendant forwarded himself nearly forty emails within the same final hour of employment does, however, indicate that Defendant intended to retain certain information beyond the termination of his employment. Viewing Defendant's download of certain sensitive information from the SharePoint site in this context, it is *plausible* that he retained at least some of that information in some form following the termination of his employment in violation of his confidentiality duties. *See Iqbal*, 556 U.S. at 679 (explaining that determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (citation modified)). The SharePoint allegations may proceed, too.

Counts II and III will not be dismissed.

### E.   Count IV: Breach of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty also survives. Under Virginia law, the elements of a breach of fiduciary duty claim are "(1) the existence of a fiduciary relationship, (2) breach of a duty arising from [that] relationship, and (3) damages." *Adair v. EQT Prod. Co.*, 320 F.R.D. 379, 397 (W.D.Va. 2017) (citing *Carstensen v. Chrisland Corp.*, 247 Va. 433, 443–44 (1994)). "[A]n employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment."

*Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289 (2003) (citing *Horne v. Holley*, 167 Va. 234, 241 (1936)). Misappropriation of trade secrets "will clearly constitute a breach of the duty of loyalty he owes to his employer." *Id.* at 291 (citing *Feddeman & Co., C.P.A., P.C. v. Langan Assocs., P.C.*, 260 Va. 35, 42 (2000)). Plaintiff has plausibly alleged misappropriation of trade secrets, and the first two elements of this claim are satisfied. As for damages, they need not be pleaded with specificity. *See DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F.Supp.3d 579, 588 (E.D.Va. 2014) (citing *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 804 (Bankr.E.D.Va. 2012)). Rather, a plaintiff need only allege "facts that would allow it to recover *some* damages on its breach of fiduciary duty claim." *Id.* (emphasis added) (quoting *United States v. Douglas*, 626 F.Supp. 621, 623 (E.D.Va. 1985)). The alleged loss of confidentiality, after considerable investment by Plaintiff in developing the confidential information and maintaining its confidentiality, (ECF No. 1 ¶¶ 14–15), suffices for the damages element. Count IV will not be dismissed.

**F.   Count V: Conversion**

Defendant next moves to dismiss Plaintiff's conversion count, but with no greater success. Virginia law provides that conversion includes any "act of dominion wrongfully exerted over property in

31

denial of the owner's right, or inconsistent with it." *Mackey v. McDannald*, 298 Va. 645, 659 (2020) (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994)). "Although a cause of action for conversion typically applies only to tangible property," Virginia "has recognized the conversion of intangible property rights that 'arise from or are merged with a document.'" *Id.* (quoting *United Leasing*, at 305).

Defendant does not appear to dispute that Plaintiff had a property right in the allegedly confidential information contained in the forwarded emails (and SharePoint documents). Instead, he argues that electronic data is not subject to conversion and none of his actions concerning Peraton emails and electronic documents deprived Plaintiff of possession of such electronic information. (ECF No. 18-1, at 25). Defendant misstates Virginia law,[9] which

---

[9] The Virginia case Defendant cites says that the wrongful dominion must "depriv[e] plaintiff of possession." *Kirdassi v. White*, 84 Va.App. 260, 297 (2025) (quoting *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 838 F.Supp.2d 436, 440 (E.D.Va. 2012)). But the *Kirdassi* court appeared to believe that this phrasing was synonymous with the seemingly broader standard that wrongful dominion need only be "inconsistent" with the plaintiff's rights. *See id.* That equivalency is dubious, especially as Virginia courts have expanded conversion to intangible property. Although there is a strand of cases containing language supporting Defendant's position, the bulk of authority supports the broader interpretation of conversion. *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F.Supp.2d 443, 455 (E.D.Va. 2009) ("Virginia courts have, however, demonstrated a distinct willingness to expand the scope of the doctrine of conversion in light of advancing technology." (citing *United Leasing*, 247 Va. at 304)).

*does* permit claims for conversion of electronic data under appropriate circumstances, *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F.Supp.2d 443, 455 (E.D.Va. 2009) (citing *Combined Ins. Co. of Am. v. Wiest*, 578 F.Supp.2d 822, 835 (W.D.Va. 2008)), even when the converted property is a copy and thus does not completely deprive the property owner of possession, *id.* ("[T]he purloining of copies of documents would constitute conversion because such action is an act of 'dominion' inconsistent with the true owner's property rights."). In fact, at least one court has concluded that the forwarding of emails containing confidential information from a corporate to a personal account states a plausible claim of conversion. *See Brainware, Inc. v. Mahan*, 808 F.Supp.2d 820, 829–30 (E.D.Va. 2011). In light of this case law, and Defendant's scant briefing on the matter, the conversion claim may proceed.[10]

G.   **Count VI: Fraud**

Plaintiff's fraud claim also survives Defendant's motion to dismiss. To state a claim for fraud, a plaintiff must allege "(1)

---

[10] Defendant also argues that his deletion of the emails moots the conversion claim. (ECF No. 18-1, at 25). Again, the question of deletion is outside the scope of review on the motion to dismiss. Moreover, Defendant fails to explain why subsequent deletion necessarily moots a conversion claim. *Cf. Johnson v. Westlake Flooring Co.*, 744 F.Supp.3d 622, 630 (E.D.Va. 2024) ("[W]here a person is liable for conversion, *the return of the property at issue is not a defense*, only a way of mitigating damages." (citation modified)).

a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Rsch. Corp. v. Alequin*, 247 Va. 143, 148 (1994) (citing *Bryant v. Peckinpaugh*, 241 Va. 172, 175 (1991); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984)). These allegations must meet the heightened scrutiny of Fed.R.Civ.P. 9(b), which requires that plaintiffs plead fraud with particularity. Plaintiff alleges that Defendant committed fraud when, on May 8, 2025, he represented on the Employee Debriefing Form that he understood his confidentiality obligations under the LOU and "did not have information or knowledge concerning any violation" thereof. (ECF No. 1 ¶ 96). More specifically, the Employee Debriefing Form contained, in relevant part, the following representations:

> **Confidential Information Acquired During my Employment.** I acknowledge my obligations regarding the safeguarding of confidential information after the end of my employment with Peraton. I will hold all Confidential Information that I obtained during my employment with Peraton in trust and confidence and I will not use or disclose to any person or entity any Confidential Information except with the prior permission of Peraton. Also, I will not use any Peraton Confidential Information for the benefit of anyone other than Peraton.
>
> **Return of Peraton Property.** I understand my obligation to return to Peraton all written

34

> materials and other tangible objects, including copies, made or compiled by me or made available to me in the course of my employment.

(ECF No. 1-4, at 2).  Plaintiff argues that these representations were false when made because Defendant knew at the time that he intended to misappropriate Plaintiff's trade secrets.  (ECF No. 20-1, at 30–31).

Defendant contests that his representations were false, intentionally misleading, and relied upon, but he demands too much. Falsity and intent to mislead can be inferred circumstantially from the fact that he forwarded the emails and accessed the SharePoint just one day after signing the Employee Debriefing Form. Fed.R.Civ.P. 9(b) ("[I]ntent[] . . . may be alleged generally."). The Complaint alleges that Plaintiff relied on these representations and that Defendant intended it to rely on them in order "to provide him with continued access to Peraton's systems and network."  (ECF No. 1 ¶¶ 97, 99).  It also alleges that Plaintiff relied on those representations "to its detriment." (*Id.* ¶ 99).  Reliance is thus fairly inferred, too.  These allegations meet the heightened Rule 9(b) standard because they supply "the 'time, place and contents of the false representation,'" namely the confidentiality and return of property representations in the Employee Debriefing Form on May 8, 2025, "as well as the identity of the person making the misrepresentation," Mr. Hussain, "and

35

what [was] obtained thereby," continued access to the Peraton network. *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (alteration in original) (*quoting Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).   They thus suffice to state a claim for fraud. Count VI will not be dismissed.

### H.    Count VII: Unjust Enrichment

Finally, Plaintiff's claim for unjust enrichment may proceed in the alternative.  Defendant argues that Plaintiff cannot assert an unjust enrichment claim because the parties' relationship is governed by contract.  (ECF Nos. 18-1, at 30; 22, at 10).   It is true under Virginia law that "a plaintiff cannot recover on claims of both breach of contract and unjust enrichment if both claims 'cover[] the same subject matter.'"  *Eagle Paper Int'l, Inc. v. Cont'l Paper Grading Co.*, 726 F.Supp.3d 541, 552 (E.D.Va. 2024) (alteration in original) (quoting *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 519 (2018)).  But "a plaintiff may plead alternative claims for breach of contract and unjust enrichment 'when the applicability or enforceability of the contract is in dispute.'" *Id.* (quoting *McPike v. Zero-Gravity Holdings, Inc.*, 280 F.Supp.3d 800, 810 (E.D.Va. 2017)) (citing *Com. & Indus. Ins. Co. v. Advance Tech., Inc.*, No. 09-cv-27, 2009 WL 10688418, at *1 (E.D.Va. Oct. 7, 2009)).  There is at least some background dispute about the

36

applicability of the LOU to any actions taken by Defendant after he purportedly returned a signed severance agreement to Plaintiff on May 12, 2025.  (*See* ECF No. 18-1, at 5 n.1).  On the motion-to-dismiss record, that is enough.  Plaintiff's unjust enrichment claim is construed as an alternative theory of recovery, and its availability will be finally determined at a later time.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for expedited discovery will be denied, Defendant's motion for leave to file surreply will be denied as moot, and Defendant's motion to dismiss will be denied.  A separate order will follow.

| /s/ |
| --- |
| DEBORAH K. CHASANOW<br>United States District Judge |

37